UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ZACHERY ESSEX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00447-JMS-DLP |
| | ) | |
| ATTORNEY GENERAL OF THE STATE OF | ) | |
| INDIANA,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Zachery Essex's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISF 20-02-0201. For the reasons explained in this Entry, Mr. Essex's petition is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

---

[1] The Court notes that the proper respondent is the Warden of the facility where Mr. Essex is confined. **The clerk is directed** to **modify the docket** to reflect the respondent as the Warden of Putnamville Correctional Facility.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

### B. Disciplinary Proceeding

On February 8, 2020, Indiana Department of Correction (IDOC) Officer Harden wrote a Report of Conduct charging Mr. Essex with a violation of IDOC Adult Disciplinary code B-231, intoxicant:

> On 2-8-20 at approximately 1215 hours I C/O Harden 533 was conducting a random shake down on bed 18LC assigned to Offender Essex, Zachary (149053). During this shakedown I found multiple pieces of blank paper laying under the blanket on his assigned bed. Due to this appearing to be the paper we were notified by Internal Investigations to look out for this offender is being written up for violating 231 Intoxicants. This offender was notified of this conduct report along with issued a confiscation slip and identified by his state issued wristband. This offender had torn this white blank paper up into squares.

Dkt. 9-1.

The respondent notes that the last sentence of the conduct report "appears to have been added after the conduct report was returned" to the reporting officer for more information. Dkt. 9 at 3; *see also* dkt. 9-1 at 5 (Conduct Adjustment Board return of conduct report for supervisor's signature and asking what kind of paper was found to support the charge). The additional information about the paper was added, and the supervisor signed the report four days after it was written. Dkt. 9-1. A Notice of Confiscated property form was completed, pictures of the paper were sent to the IDOC Office of Investigations and Intelligence (OII), and an evidence record was made. *Id.* at 2-4.

On February 13, 2020, Officer David Wire conducted an examination and review of the evidence and prepared a report for the disciplinary hearing board chairman, the screening officer, and the investigation file. Dkt. 9-2. Officer Wire stated that "[b]ased upon [his] training and experience, this item is consistent with paper or an organic substance treated with a chemical for

the purpose of creating a smokable or ingestible intoxicant." *Id.* at 2. Officer Wire found that the item was packaged in a manner and contained "paper slivers consistent with chemically-treated paper," such that he had reasonable belief that "this item is chemically treated paper or substance." *Id.* He reasoned that, "There is no other reasonable explanation for the above listed factors other than for the item to be consumed for the intended purpose of causing intoxication." *Id.*

Mr. Essex was notified of the charge on February 21, 2020. Dkt. 9-3. He pled not guilty, did not request witnesses, and wanted the item tested. *Id.* Mr. Essex's hearing was postponed due to further investigation pending the OII report pertaining to the paper. Dkt. 9-5.

The disciplinary hearing was held on March 4, 2020. Dkt. 9-6. Mr. Essex stated that he makes cards and when he does not like them, he tears them up, and these scraps of paper is what the officer found. *Id.* The disciplinary hearing officer (DHO) considered the conduct and investigation reports and found Mr. Essex guilty. *Id.* His sanctions included deprivation of earned credit time and a demotion in credit earning class. *Id.*

Mr. Essex's appeals to the Facility Head and IDOC Final Reviewing Authority were unsuccessful. Dkt. 9-8; dkt. 9-9. He then filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 2.

**C. Analysis**

The Court discerns three claims in the petition: (1) the substance was not tested to establish that it was an intoxicant; (2) IDOC policy was violated; and (3) the supervisor did not sign the conduct report within 24 hours of the time it was written. *Id.* at 2-5.

**1. Laboratory Testing and Sufficiency of Evidence**

Mr. Essex's argument that the paper was never tested fails. There is no constitutional right to laboratory testing of suspected contraband. *See Manley v. Butts*, 599 F. App'x 574, 576 (7th Cir.

3

2017) (petitioner "not entitled to demand laboratory testing"). So long as other evidence is sufficient, there is no due process violation when laboratory testing is denied. "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Id.*

Other evidence exists in the record to support Mr. Essex's conviction, such as the conduct report and Officer Wise's investigative report. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide[ ] 'some evidence' for the  . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

Code B-231 prohibits an offender from "[m]aking or possessing intoxicants, or being under the influence of any intoxicating substance (e.g., alcohol, inhalants)." Dkt. 9-12. As indicated in his lower level appeal, Mr. Essex believes the DHO based his decision on Officer Wire's "opinion" that "blank white square[s] of paper with no identifying marks of any kind" was "believed to be an intoxicant." Dkt. 9-8 at 1. Here, the conduct report provides "some evidence" that the blank paper had been specifically torn into squares and was found underneath Mr. Essex's blanket on his bed. Dkt. 9-1. Officer Harden stated in his report that this was the kind of paper that staff was to be on the "lookout for" as instructed by the OII. *Id.* Once confiscated, this paper was submitted to

Intelligence Officer Wire for further examination. Dkt. 9-2. Officer Wire's report corroborated Officer Harden's impression and specifically identified that the paper was packaged like that of chemically-treated paper and that it did contain tell-tale paper slivers consistent with such. Dkt. 9-2. Officer Wire is entitled to rely upon his training and experience of examining chemically-treated paper or substances, and he stated that he could find no other reasonable explanation other than that the items were to be consumed for causing intoxication. *Id.*

The disciplinary code contemplates "making" or "possessing" intoxicants—which would reasonably include possession of the type of paper that can be and is typically chemically-treated for this purpose. The staff reports alone provide "some evidence" to support the DHO's decision. Mr. Essex was not entitled to a chemical test to confirm that the papers had been chemically-treated. Mr. Essex moves the Court to believe his version of the incident, that the paper was left over debris from making cards, but he is asking the Court to engage in reweighing the evidence which is something it cannot do. It is within the purview of the DHO to assign credibility and weight to the evidence, and simply because the DHO believed the physical evidence and the OII analysis over Mr. Essex's explanation does not establish that Mr. Essex was denied due process.

### 2.  Violation of IDOC Policy

Mr. Essex next alleges a violation of IDOC policy and administrative procedure. Dkt. 2 at 2. Specifically, he argues that a staff person shall provide a written explanation in the conduct report of the characteristics of the substance that lead staff to believe it is a controlled or intoxicating substance. *Id.* He claims none of these procedures were followed, and thus, he was denied a fair hearing. *Id.* However, this argument is without merit. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Claims based on prison policies are

not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."). This claim based on IDOC policy fails.

### 3. Delay of Supervisor's Signature

The respondent first argues that Mr. Essex failed to exhaust his administrative remedies as to his claim related to the supervisor's signature on the conduct report four days after it was written, but the Court finds it more efficient to consider the claims on the merits. *See Washington v. Boughton,* 884 F.3d 692, 698 (7th Cir. 2018).

There is no due process requirement that a supervisor approve or sign a conduct report. Moreover, to the extent such a signature is required by IDOC policy, as explained above, any violation thereof is not a cognizable claim for habeas relief.

### 4. New Arguments in Reply

Mr. Essex raises additional issues in his reply. Dkt. 10. He describes errors or inconsistencies in Officer Wire's report and the conduct report regarding whether the paper was soaked with coffee or tea or was blank, and differing recordation of the incident date and confiscating officer's name. *Id.* at 2. Mr. Essex did not raise these issues in his petition. The Court need not address these discrepancies because new arguments may not be raised for the first time in a reply. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014).

**D. Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Essex to the relief he seeks. Accordingly, Mr. Essex's petition for a writ of habeas corpus must be **denied** and the **action dismissed** with prejudice.

Final Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 6/11/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

ZACHERY ESSEX
149053
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov